## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SAMMIE DWAYNE MCPHAUL AS Special Administrator of the ESTATE OF ALFRED CORNELIUS MCPHAUL**<br><br>     **Plaintiff,**<br><br><br>**v.**<br>**COLLEGE  HILLS  OPCO,  LLC;  and CAMPBELL STREET SERVICES LLC**<br><br>     **Defendants.** | **Case No.: 2:25-cv-02337-JWB-BGS**<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANTS' JOINT MOTION TO DISMISS

# INTRODUCTION

This case presents a straightforward application of Kansas law: an estate administrator pursuing survival claims that only the estate can bring cannot be in privity with an individual heir who previously brought wrongful death claims that only heirs can bring. The categorical statutory prohibition against heirs asserting survival claims creates an insurmountable barrier to Defendants' claim-splitting theory.

Kansas law provides that a survival action "must be maintained by the personal representative of the decedent and cannot be prosecuted by a decedent's heirs." *Cory v. Troth*, 170 Kan. 50, 52-53, 223 P.2d 1008, 1011 (1950). This prohibition is absolute — not a matter of preference or strategy, but of legal impossibility. Three judges of this District have already resolved this precise issue. *Moore v. Golden Oaks Healthcare, Inc.*, 2025 WL 2531841 (D. Kan. Sept. 3, 2025); *Keller v. Diversicare of Council Grove, LLC*, 2024 WL 4164696 (D. Kan. Sept. 12, 2024); *Estate of Smart v. City of Wichita*, 2018 WL 534335 (D. Kan. Jan. 24, 2018). Their unanimous conclusion controls here.

Moreover, none of defendants' arguments are supported in fact or law. Specifically:

**Defendants' Argument #1: "**The Same Parties Are Involved Because Sammie McPhaul Appears In Both Cases"

DEFEATED BY: Kansas law mandates that estates and heirs are different legal entities. *Cory v. Troth*, 170 Kan. at 52-53, 223 P.2d at 1011. The fact that the same human being serves in different legal capacities does not merge those capacities. *Moore*, 2025 WL 2531841, at *3 (recognizing "distinct identities" even when "the same individual" brings both claims). Federal Rule 17(a)(3) specifically contemplates substitution of different parties, proving they are not the same.

**Defendants' Argument #2:** "These Are The Same Claims Because Both Arise From Alfred Mcphaul's Death"

DEFEATED BY: Kansas creates two entirely separate causes of action with different statutory authorization (K.S.A. § 60-1801 vs. § 60-1902), different damages (conscious pain and suffering vs. survivors' losses), different evidence requirements (*White v. Koerner*, 63 Kan. App. 2d 622, 626, 533 P.3d 314 (2023)), and different beneficiaries. Common facts do not create common claims. *Nelson v. Acosta-Corrales*, 2014 WL 1048007, at *1 (D. Kan. Mar. 18, 2014) (recognizing "two different causes of action").

**Defendants' Argument #3**: "Plaintiff Could Have Raised Both Claims In The First Action"

DEFEATED BY: Legal impossibility. An heir "cannot" prosecute survival claims. *Cory*, 170 Kan. at 52-53, 223 P.2d at 1011. This is not "could have but chose not to" — this is "could not as a matter of law." *Garver v. Principal Life Insurance Co.*, 2021 WL 2338255, at *3 (D. Kan. June 8, 2021) (where party "lacked legal capacity," knowledge is "irrelevant"). No case applies claim-splitting where legal impossibility exists.

**Defendants' Argument #4**: "The Expert Disclosures And Estate References Show Plaintiff Was Asserting Survival Claims"

DEFEATED BY: Discovery actions cannot create legal capacity. Filing expert disclosures without authority makes them void, not valid. These filings served notice functions only — which actually helps the Estate by satisfying Fed. R. Civ. P. 15(c)'s notice requirement for relation back if that were necessary. The Court's own uncertainty about whether claims were "properly asserted" confirms lack of capacity (Doc. 75, Case No. 6:24-cv-01143, n.1).

**Defendants' Argument #5**: "This Is Procedural Manipulation To Avoid Deadlines"

DEFEATED BY: Following Kansas law's requirements cannot be manipulation. The five-month gap reflects probate realities, not gamesmanship. The five-day window (including a federal holiday) between appointment and amendment deadline made amendment practically impossible. Three recent cases with similar timing found no manipulation (*Moore*, *Keller*, *Estate of Smart*).

**Defendants' Argument #6**: "*Serlin* Requires Dismissal Of Duplicative Suits"

DEFEATED BY: *Serlin* involved one plaintiff with curable defects filing duplicate suits. Here, different parties with different statutory authorization bring different claims. *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 224 (7th Cir. 1993) (dismissal appropriate where plaintiff's "own failure to follow the rules" created problem). Following Kansas's mandatory party requirements is not "failure to follow rules."

**Defendants' Argument #7**: "The Consolidation Motion Shows These Are The Same Claims"

DEFEATED BY: Consolidation is sought precisely because these are separate actions needing coordination. *Hall v. Hall*, 584 U.S. 59, 69 (2018) (consolidation "does not merge the consolidated cases into a single cause"). The need for consolidation proves different parties pursuing different claims — if they were truly the same, no consolidation would be needed.

## STATEMENT OF FACTS

On August 16, 2024, Sammie McPhaul filed suit as the surviving brother of Alfred McPhaul, asserting wrongful death claims that belong exclusively to heirs under K.S.A. § 60-1902. [Doc. 1, Case No. 6:24-cv-01143, ¶¶ 2, 96.] His brother Alfred had died on April 21, 2024, from allegedly "avoidable" pressure injuries sustained at College Hills, a skilled nursing facility in Wichita operated by Defendants College Hills OPCO, LLC and Campbell Street Services, LLC. *Id*., ¶ 2. At that moment, no estate existed, no administrator had been appointed, and no petition for administration had been filed. *See* Exh. 1 to Defendants' Motion, Doc. 10-1, Case No. 2:25-cv-02337. Indeed, Defendants' own evidence confirms the petition would not be filed for another five months. *Id*.. The Complaint referenced Mr. McPhaul as the "soon to be appointed administrator of the Estate of Alfred McPhaul"— a designation that served a specific legal purpose under Federal Rules 15(c) and 17(a)(3). [Doc. 1, Case No. 6:24-cv-01143]. The Complaint explicitly acknowledged that "Sammie McPhaul is in the process of becoming the duly appointed administrator of the Estate of Alfred McPhaul." *Id*., ¶ 7. This designation ensured Defendants had notice that estate claims would follow once an administrator was appointed, thereby preserving the Estate's ability to invoke relation-back doctrine. *See* Fed. R. Civ. P. 15(c)(1)(B).

The Court entered a Scheduling Order on November 6, 2024, setting January 20, 2025, as the deadline to amend pleadings. (Doc. 24, Case No. 6:24-cv-01143.) Discovery proceeded with both parties conducting depositions and exchanging written discovery

The probate process moved according to Kansas court scheduling, not Plaintiff's control. The Petition for Appointment of a Special Administrator was filed in Sedgwick County District Court on January 13, 2025—nearly five months after the wrongful death action commenced. [Exh. 1 to Defendants' Motion, Doc. 10-1, Case No. 2:25-cv-02337.] On January 15, 2025, the probate court formally appointed Sammie McPhaul as Special Administrator of the Estate of Alfred Cornelius McPhaul. [Exh. 2 to Defendants' Motion, Doc. 10-2, Case No. 2:25-cv-02337.] Only with this

appointment did the Estate come into legal existence as a party capable of asserting survival claims under K.S.A. § 60-1801. The deadline to amend pleadings expired on January 20, 2025—just five days after the appointment. [Doc. 24, Case No. 6:24-cv-01143]. This five-day window included the federal holiday for Martin Luther King Jr. Day, making amendment practically impossible given the need to draft, review, and file appropriate pleadings following the probate court's order.

On June 21, 2025, this Court issued a Memorandum and Order finding that the First Case alleged "both a wrongful death claim and a survival action." [Doc. 75, Case No. 6:24-cv-01143, p. 2.]. Significantly, the Court noted that Sammie McPhaul "is bringing both claims" but expressed uncertainty about whether the survival claim by a "soon to be appointed administrator" was "properly asserted." *Id.*, p. 1 & n.1. This observation identifies the precise defect now cured: the lack of proper party status to assert survival claims.

On June 22, 2025, the Estate filed this separate action with Sammie McPhaul now acting in his legally authorized capacity as the duly appointed "Special Administrator of the Estate of Alfred Cornelius McPhaul." [Doc. 1, Case No. 2:25-cv-02337]. The Estate asserted survival claims for Mr. McPhaul's conscious pain and suffering under K.S.A. § 60-1801 — claims that Kansas law absolutely prohibited the individual heir from asserting. *Id.*, ¶¶ 114, 132. The Estate's Complaint names the same defendants regarding the same underlying facts: Mr. McPhaul's death on April 21, 2024, allegedly resulting from pressure injuries developed at College Hills. [Compare Doc. 1, Case No. 6:24-cv-01143, ¶ 2 with Doc. 1, Case No. 2:25-cv-02337, ¶ 1]. The 154-day period between the appointment and filing reflects normal litigation considerations, including evaluating the proper procedural mechanism given the expired amendment deadline and the Court's expressed uncertainty about the "properly asserted" nature of survival claims in the First Case. [Doc. 75, Case No. 6:24-cv-01143, n.1].

On July 18, 2025, Plaintiff filed a Motion to Consolidate under Fed. R. Civ. P. 42(a) to promote judicial efficiency while respecting Kansas's requirement that different parties bring different claims. [Doc. 5, Case No. 2:25-cv-02337; Doc. 71, Case No. 6:24-cv-01143].

4

On September 23, 2025, Defendants filed their Motion to Dismiss, arguing the Estate's claims violate the rule against claim-splitting. [Doc. 10, Case No. 2:25-cv-02337].

## LEGAL STANDARD

To establish claim-splitting, a movant must prove four elements: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017). For purposes of claim-splitting analysis, courts assume the first suit reached final judgment and ask whether it would preclude the second suit. *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). Claim-splitting also requires that the claims "could have been raised" in the first action. *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196, 1199 (2015). Where legal impossibility prevents assertion of claims, this element cannot be satisfied. *Garver v. Principal Life Insurance Co.*, 2021 WL 2338255, at *3 (D. Kan. June 8, 2021).

## ARGUMENT

### I.   LEGAL IMPOSSIBILITY DEFEATS CLAIM-SPLITTING AS A MATTER OF LAW

#### A.  Kansas's Categorical Prohibition Creates Legal Impossibility

The claim-splitting doctrine requires that claims "could have been raised" in the first action. *Cain*, 302 Kan. at 434, 354 P.3d at 1199. This requirement presupposes the legal ability to assert such claims. Where state law categorically prohibits a party from asserting certain claims, the "could have been raised" element fails as a matter of law. Kansas law speaks in absolutes: survival actions "must be maintained by the personal representative of the decedent and cannot be prosecuted by a decedent's heirs." *Cory*, 170 Kan. at 52-53, 223 P.2d at 1011 (emphasis added). Federal courts applying Kansas law reach identical conclusions. *Shinkle v. Union City Body Co.*, 94 F.R.D. 631, 637 (D. Kan. 1982) ("Kansas law requires that a survival action must be maintained by the personal representative of the decedent and cannot be prosecuted by a decedent's heirs"); *Hembree v. Tinnin*,

807 F. Supp. 109, 110 (D. Kan. 1992) ("the decedent's action survives to the decedent's personal representative — not to his heirs") (citation and internal quotation marks omitted).. The consequences of violating this prohibition are jurisdictional. Any attempt by an heir to assert survival claims would be void ab initio. *Arnold v. City of Olathe*, 413 F. Supp. 3d 1087, 1099-1100 (D. Kan. 2019) ("For § 1983 claims of a deceased party, the proper party is the estate of the victim. It is a survival action, and like a state law survival action, cannot be brought by the decedent's heirs") (citation omitted). As *Lewis ex rel. Lewis v. BHS College Meadows* explained, a survival action "must be brought pursuant to K.S.A. 60–1801, not by the heirs-at-law, but rather by the administrator of the estate." 2004 WL 870818, at *4 (D. Kan. Apr. 21, 2004).

## B.    The Capacity/Standing Distinction Confirms Legal Impossibility

This District has carefully distinguished between standing and capacity in this precise context. *Hoskinson v. High Gear Repair, Inc.* explained that "the judicial determination of who should represent the estate turns not on who has suffered an injury from actions taken against the decedent (a standing inquiry), but rather on who can best carry out the duties, fiduciary and otherwise, imposed by the appointment (a capacity inquiry)." 2013 WL 4028804, at *6 (D. Kan. Aug. 7, 2013) (quoting *Hill v. Martinez*, 87 F.Supp.2d 1115, 1122 (D.Colo.2000)).

The Tenth Circuit clarified this distinction:

> the term standing, however, is used loosely in many contexts to denote the party with a right to bring a particular cause of action. This practice leads to much confusion when it is necessary to distinguish between 'standing' in its most technical sense and the concept of real party in interest under Fed.R.Civ.P. 17(a).

*Federal Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1235 (10th Cir. 1990). Without capacity, a party cannot assert claims regardless of knowledge, intent, or diligence. This District recognized this principle in *Garver*, holding that where a party "lacked legal capacity," knowledge becomes "irrelevant" to the claim-splitting analysis. 2021 WL 2338255, at *3. The *Garver* court's recognition that capacity issues fundamentally alter the analysis applies with full force here.

6

### C. No Authority Supports Claim-Splitting Where Legal Impossibility Exists

Defendants cannot cite — and research reveals no case — where claim-splitting barred claims that were legally impossible for the first plaintiff to assert. This absence is not coincidental but reflects the fundamental principle that the law does not demand the impossible. Every case applying claim-splitting involves a plaintiff who had the legal ability to bring all claims but chose not to do so. See, e.g., *Hartsel Springs Ranch v. Bluegreen Corp.*, 296 F.3d 982, 990 (10th Cir. 2002) (one plaintiff choosing between forums); *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (one plaintiff filing duplicate suits).

## II. KANSAS LAW CREATES TWO ENTIRELY DIFFERENT CAUSES OF ACTION

### A. Distinct Statutory Schemes Establish Different Claims

The claim-splitting doctrine requires identity of claims. *Lenox MacLaren*, 847 F.3d at 1239. Kansas law defeats this requirement by creating two entirely separate statutory causes of action with no overlap in authorization, damages, or beneficiaries. This District has repeatedly recognized this distinction. As *Nelson v. Acosta-Corrales* explained

> Under Kansas law ***there are two different causes of action*** that may arise when a person's death is allegedly caused by the negligence of another: a wrongful death action and a survival action.

2014 WL 1048007, at *1 (D. Kan. Mar. 18, 2014); accord *Marler v. Hiebert*, 960 F.Supp. 253, 254 (D. Kan. 1997) (emphasis added). *Draughon v. United States* elaborated:

> [a] survival action allows the personal representative of the decedent's estate to recover damages accrued by the injured party between the time of injury and death, including pain and suffering experienced by the injured party between the time of injury and the time of death.

103 F. Supp. 3d 1266, 1278 (D. Kan. 2015).

The statutory framework confirms this separation. K.S.A. § 60-1801 creates the survival action, preserving "causes of action" that the decedent possessed at death. The Kansas Supreme Court has held this statute "authorized [plaintiff] to bring an action in her capacity as decedent's administratrix to

recover for that damage." *Mason v. Gerin Corp.*, 231 Kan. 718, 720, 647 P.2d 1340, 1343 (1982). K.S.A. § 60-1902 creates an entirely different wrongful death action for heirs' post-death losses. These statutes operate independently with mutually exclusive authorized plaintiffs, damages, and beneficiaries.

### B.  Different Evidentiary Requirements Confirm Different Claims

The evidentiary requirements for these claims could not be more distinct. For survival claims, Kansas law requires proof that "damages are recoverable only for pain and suffering which is consciously experienced." *Gregory v. Carey*, 791 P.2d 1329, 1333 (Kan. 1990). This requires specific medical evidence that "the victim had 'exhibited some cognitive awareness' between the time of trauma and death." *Fanning v. Sitton Motor Lines*, 695 F. Supp. 2d 1156, 1160 (D. Kan. 2010). The specificity of this requirement cannot be overstated. *Cochrane v. Schneider Nat'l Carriers, Inc.* held that "even the movement of the toes or legs of the decedent is not indicative of conscious pain and suffering when there is not evidence that the movement was in response to pain or touch." 968 F.Supp. 613, 617 (D.Kan. 1997). Courts require evidence of cognitive response, as in *Pape v. Kansas Power & Light Co.*, where "in response to a request by Kathleen Pape to squeeze her hand if he understood her, Terry Pape [the victim] squeezed her hand." 231 Kan. 595, 598, 647 P.2d 320, 325 (1982).

On the other hand, wrongful death actions require entirely different evidence. The Kansas Court of Appeals definitively held that conscious pain and suffering damages are available only in survival actions, not wrongful death claims. *White v. Koerner*, 63 Kan. App. 2d 622, 626, 533 P.3d 314 (2023). Instead, wrongful death claims focus on survivors' losses — "[m[ental anguish, suffering or bereavement; [] loss of society, companionship, comfort or protection; [] loss of marital care, attention, advice or counsel; [and] loss of filial care or attention." K.S.A. § 60-1904; see *Heimerman v. Rose*, 2014 WL 2711904, at *2 (D. Kan. June 16, 2014).

Claims requiring entirely different evidence to prove entirely different damages for entirely different beneficiaries cannot constitute "the same claim" for claim-splitting purposes.[1] The absence of any overlapping elements provides an independent basis for denying Defendants' motion.

## III.    THE ESTATE AND INDIVIDUAL HEIR ARE DIFFERENT PARTIES UNDER ALL APPLICABLE PRECEDENT

### A.  Kansas Supreme Court Precedent Establishes Different Parties

The claim-splitting doctrine requires identity of parties or privies. *Lenox MacLaren*, 847 F.3d at 1239. The Kansas Supreme Court's decision in *Yorhees v. Baltazar* definitively establishes that estates and heirs are different parties, even when the same individual serves both roles. 283 Kan. 389, 399-410, 153 P.3d 1227, 1235-40 (2007). In *Yorhees*, the Court held that appointment of an administrator after the statute of limitations expired cured the lack of capacity at filing. *Id.* at 408, 153 P.3d at 1240. The Court cited *Williams v. Missouri Valley Bridge & Iron Co.* for the principle that a plaintiff "administrator without capacity can be exchanged for one with capacity who is appointed after the statute of limitations has run." *Id.* at 405-06, 153 P.3d at 1238 (citing *Williams*, 111 Kan. 34, 35, 206 P. 327 (1922)). Most significantly: *Harlan v. Loomis*:

> the substitution of one party for another as plaintiff did not change the cause of action, and that such amendment related back to the institution of the action and that the statute of limitations stopped running as to the substituted plaintiff when the action was begun rather than when the substitution was made.

*Id.* at 402, 153 P.3d at 1236 (citing *Harlan v. Loomis*, 92 Kan. 398, 140 P. 845 (1914)) (emphasis

---

[1] *Serlin* is inapplicable to different parties with different claims. *Serlin v. Arthur Andersen & Co.* involved one plaintiff filing duplicate suits to hedge against a curable service defect. 3 F.3d 221, 223 (7th Cir. 1993). The court dismissed because "if [plaintiff] eventually does find himself out of court, that result will be entirely a consequence of the plaintiff's own failure to follow the rules." *Id.* at 224.  The distinction is fundamental. *Serlin*'s plaintiff chose not to cure a defect within his control. Here, Plaintiff faced a legal prohibition beyond anyone's control. *Serlin* emphasized the irrationality of "two federal judges sitting on the same district court...devoting scarce judicial resources to the adjudication of the same charges by essentially the same plaintiffs against the same defendants." *Id.* (emphasis added).  This case presents different plaintiffs bringing different statutory claims that Kansas law requires be brought separately. Following mandatory statutory requirements is not "failure to follow the rules" but compliance with them. *Serlin*'s rationale supports, rather than undermines, the Estate's position.

added). This principle — requiring "substitution of one party for another" — necessarily means the original party and the substituted party are different. The Tenth Circuit has consistently applied this Kansas law. *Montgomery Ward & Co. v. Callahan*, 127 F.2d 32, 36-37 (10th Cir. 1942) (applying Kansas law that substitution of proper party relates back to commencement).[2]

## B. The Absence of Privity Under *Cain v. Jacox*

Even assuming privity analysis applies, the Kansas Supreme Court's framework in *Cain v. Jacox* defeats any finding of privity. The Court requires "a showing that the parties in the two actions are really and substantially" the same. 302 Kan. at 4389 354 P.3d at 1201. This determination is "an equitable determination grounded in principles of fundamental fairness and sound public policy," requiring "careful examination into the circumstances of each case." *Id*. at 437, 354 P.3d at 1201. Applying *Cain*'s framework reveals no alignment of interests. The Estate and heir possess different rights under different statutes (K.S.A. § 60-1801 vs. § 60-1902), recover different damages through different evidence, and benefit different recipients. Most critically, the legal impossibility preventing the heir from asserting survival claims independently defeats any privity finding. The *Cain* Court's own analysis reinforces this conclusion. Despite the Texas Attorney General's express statutory

---

[2] Three recent cases from this District have addressed identical circumstances, each concluding that estates and heirs are different parties requiring substitution or amendment. In *Moore v. Golden Oaks Healthcare*, this Court confronted a plaintiff who filed as a "soon to be appointed administrator" before receiving formal appointment. 2025 WL 2531841, at *3 (D. Kan. Sept. 3, 2025). The court explicitly held that "the same individual (i.e., Crystal Moore) is bringing both claims" does not merge the "distinct identities" of heir and administrator. *Id*. This holding directly refutes Defendants' argument that Sammie McPhaul's presence in both cases makes them the same party. In *Keller v. Diversicare*, the plaintiff similarly filed as a "soon to be appointed special administrator" before formal appointment. 2024 WL 4164696, at *3 (D. Kan. Sept. 12, 2024). The court permitted amendment post-appointment, holding that "there is no doubt here that defendants had notice of the factual situation giving rise to the Estate's survival claim." *Id*. The court applied *Shinkle*'s principle that "since there can be no prejudice to the defendants in granting a request to amend, such an amendment will be permitted to relate back to the filing of the original complaint." *Id*. (citing *Shinkle*, 94 F.R.D. at 638). In *Estate of Smart v. City of Wichita*, parents filed as administrators before appointment. 2018 WL 534335, at *3 (D. Kan. Jan. 24, 2018). The court held that "post-appointment ratification of the suit had the same effect as if the action had initially been commenced in the name of the real party in interest pursuant to Fed. R. Civ. P. 17(a)." *Id*. The court emphasized that Rule 17(a)'s "main thrust" is "to allow a correction in parties after the statute of limitations has run," recognizing these are different parties requiring correction. *Id*.

mandate to enforce child support, the Court found no privity with the mother seeking post judgment interest because the Attorney General had "no interest or stake in recovering" such amounts. *Id.* at 439, 354 P.3d at 1202. If statutory enforcement authority cannot create privity, the complete absence of authority here certainly cannot.

### C.  *Carter v. City of Emporia* is Substantively Distinguishable

*Carter v. City of Emporia* warrants careful analysis because it **at first glance** appears to support Defendants' position. In *Carter*, the Tenth Circuit found privity between an administratrix and heirs where the administratrix brought both state and federal actions. 815 F.2d 617, 620-21 (10th Cir. 1987). Defendants will argue this creates privity whenever an administrator and heir are the same person. This misreads *Carter* in three critical ways.

First, *Carter*'s administratrix possessed legal authority from the outset. The court emphasized she "appeared in both suits, from their initiation, expressly to represent the interests" of the heirs and filed "in her capacity as special administratrix of the estate" in both actions. *Id.* at 620-21. She had been formally appointed before filing either action. This created actual representative privity — she was authorized to bind the heirs, and her litigation choices did bind them. By contrast, Plaintiff here lacked any authority to represent the Estate when filing the First Case. Kansas law didn't merely limit his authority; it prohibited him entirely from asserting survival claims. *Cory*, 170 Kan. at 52-53, 223 P.2d at 1011 ("cannot be prosecuted by a decedent's heirs").

Second, the direction of representation matters. *Carter* asked whether an administrator's authorized actions in Case 1 precluded heirs from bringing Case 2. The answer was yes — authorized representative actions bind those represented. Here, the question inverts: Can an heir's unauthorized actions in Case 1 preclude an estate from bringing Case 2? The answer must be no. An heir cannot bind an estate he cannot legally represent. To hold otherwise would allow unauthorized acts to destroy legal rights — a result no precedent supports.

Third, *Carter* applied Kansas law recognizing that administrators can bind heirs because administrators owe fiduciary duties to heirs and act on their behalf. *Id.* at 621. No reciprocal relationship exists here. Heirs owe no duties to estates and cannot act on estates' behalf. The *Cain* framework confirms this: privity requires parties be "really and substantially in interest the same." 302 Kan. at 438, 354 P.3d at 1202. An administrator representing heirs' interests satisfies this standard. An heir unable to represent estate interests does not. The *Carter* court itself recognized these limitations, noting that privity existed because "Morene Carter appeared in both suits, from their initiation, expressly to represent the interests of Cynthia Carter Metz and her co-heirs-at-law." 815 F.2d at 621 (emphasis added). Without express representative capacity from initiation, *Carter*'s privity analysis doesn't apply.

Thus, while *Carter* initially seems problematic, thorough analysis reveals it supports the Estate. *Carter* stands for the unremarkable proposition that authorized representatives can bind those they represent. It does not — and cannot — stand for the proposition that unauthorized individuals can bind entities they cannot legally represent.

## IV.    THIS COURT'S PRIOR OBSERVATIONS CONFIRM LACK OF CAPACITY

This Court previously observed that the First Case alleged "both a wrongful death claim and a survival action" but questioned whether the survival claim was "properly asserted" by the "soon to be appointed administrator." (Doc. 75, Case No. 6:24-cv-01143, p. 2 & n.1). This observation identifies the precise defect now cured: lack of proper party status. Courts routinely distinguish between what parties plead and what they can legally plead. The notation of claims does not confer capacity to assert them.

## V.    THE NOTICE FUNCTION OF THE "SOON TO BE APPOINTED" DESIGNATION

The "soon to be appointed administrator" designation served a specific legal purpose: providing the notice required under Federal Rules 15(c) and 17(a)(3) to preserve the Estate's ability to pursue

survival claims through relation-back doctrine once an administrator was appointed.

Federal procedure prioritizes notice over technical capacity for relation-back purposes. *Lemmons v. Bd. of Cnty. Comm'rs* explained: "The goal of relation-back principles is to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." 2001 WL 1717856, at *3 (D. Kan. Aug. 8, 2001). The designation accomplished several objectives recognized by federal law: (1) Satisfied Fed. R. Civ. P. 15(c)(1)(B)'s requirement that amendments arise from the same transaction or occurrence; (2) Triggered Fed. R. Civ. P. 17(a)(3)'s provision that substitution of the real party relates back; (3) Ensured preservation of evidence regarding conscious pain and suffering; (4) Prevented any prejudice to Defendants through surprise.

This Court's precedent confirms such designations serve notice functions while carrying no present legal effect. *Keller*, 2024 WL 4164696, at *1; *Moore*, 2025 WL 2531841, at *3. From August 16, 2024, Defendants knew estate claims would follow once an administrator was appointed. This notice satisfies federal requirements for relation-back protection.

Importantly, defendants suffer no actual prejudice from the Estate pursuing its claims in a different capacity than the first case, seeking different damages, and where the statute of limitations has not expired. They have known since August 16, 2024, that survival claims could be pursued once an administrator was appointed for the state. The statute of limitations on the survival claim did not and has not expired. The only appropriate question is procedural — whether these claims proceed in one case or two. Consolidation, not dismissal, addresses any efficiency concerns.[3]

---

[3] Consolidation is sought precisely because these are separate actions needing coordination. *Hall v. Hall*, 584 U.S. 59, 69 (2018) (consolidation "does not merge the consolidated cases into a single cause"). The need for consolidation proves different parties pursuing different claims — if they were truly the same, no consolidation would be needed.

## VI.    DISCOVERY ACTIONS CANNOT CREATE LEGAL CAPACITY

Defendants emphasize expert disclosures filed June 13, 2025, for conscious pain and suffering. Discovery actions cannot cure jurisdictional defects or create legal capacity where none exists. The legal principle is straightforward: ultra vires acts are nullities. See *Federal Deposit Ins. Corp. v. Bachman*, 894 F.2d at 1235 (distinguishing between technical standing and real party in interest). At bottom, these disclosures served the same notice function as the "soon to be appointed administrator" designation. Under Fed. R. Civ. P. 15(c), notice to the opposing party before limitations expires is "the linchpin" for relation back. *Lemmons*, 2001 WL 1717856, at *5. These disclosures reinforced that estate claims would be pursued once proper capacity existed, further satisfying notice requirements.

## VII.    FEDERAL PROCEDURAL RULES INDEPENDENTLY REQUIRE ALLOWING THE ESTATE'S CLAIMS

Federal Rule 17(a)(3) provides: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." This language is mandatory. Once substitution occurs, the action "proceeds as if it had been originally commenced" by the proper party. The Tenth Circuit has consistently applied this principle: "The fact that an applicable statute of limitations may have run before the real parties were substituted is not significant where the change is merely formal and in no way alters the known facts and issues on which the action is based." *Metropolitan Paving Co. v. Int'l Union of Operating Engineers*, 439 F.2d 300, 306 (10th Cir. 1971) (citing *Mo., Kan. & Tex. Ry. Co. v. Wulf*, 226 U.S. 570, 575 (1913)).

Federal Rule 15(c)(1)(B) permits relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." The critical requirement is notice. *Lemmons*, 2001 WL 1717856, at *5 ("The linchpin to Rule 15(c) is notice [to the opposing party] before the limitations period expires"). This

14

notice satisfies Rule 15(c)'s requirements for relation-back protection.

**VIII.     THE TIMING REFLECTS PROBATE REALITIES, NOT MANIPULATION**

Three factors defeat any manipulation argument. First, the five-month gap between filing and the probate petition reflects normal probate proceedings, which require gathering documentation, identifying heirs, and navigating court scheduling. Kansas probate courts control timing, not plaintiffs. Second, the five-day window between appointment (January 15) and the amendment deadline (January 20) included a federal holiday, making amendment practically impossible. Third, this District routinely addresses similar timing without finding manipulation. *Moore*, *Keller*, and *Estate of Smart* all involved comparable chronologies with courts finding procedural confusion rather than tactical maneuvering. Most fundamentally, timing becomes irrelevant when legal impossibility exists. As *Garver* recognized, where a party "lacked legal capacity," knowledge and timing do not matter. 2021 WL 2338255, at *3. The heir could never have asserted estate claims regardless of when he attempted to do so.

**CONCLUSION**

The Court should deny Defendants' motion. If denied, the Estate stands ready to consolidate these cases for efficient adjudication, demonstrating good faith while respecting Kansas's requirement that different parties bring different claims.

October 13, 2025

Respectfully Submitted,

STEELE LAW FIRM II, LLC

 */s/ Jonathan Steele*

Jonathan Steele
MO#63266/KS#24852/OK# #35997
Email: jonathan@nursinghomeabuselaw.com
Direct: (913) 356-9630
Office: (816) 466-5947
Fax: (913) 416-9425
nursinghomeabuselaw.com

Missouri Office
2029 Wyandotte, Suite 100
Kansas City, MO 64108

Oklahoma Office
15401 N. May Ave., Suite 1100
Edmond, OK 73013

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that the below-signed Attorney signed the original of the above and foregoing and is maintaining the original copy at said Attorney's office, and that on October 15, 2025 a copy of the above and foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to all parties and attorneys of record.

 **/s/ Jonathan Steele**
Attorney for Plaintiff(s)