IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SAMMIE DWAYNE MCPHAUL, as
Special Administrator of the ESTATE
OF ALFRED CORNELIUS MCPHAUL

        Plaintiff,

v.                                            Case No. 25-2337-JWB

COLLEGE HILLS OPCO, LLC, *et al*.,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' joint motion to dismiss Plaintiff's complaint for failure to state a claim. (Doc. 10.) The motion is fully briefed and ripe for decision. (Docs. 15, 18.) The motion is GRANTED for the reasons stated herein.

## I.  Facts

The facts relevant to disposing of this motion are straightforward. The underlying matter involves allegations of nursing home negligence and wrongful death. (Doc. 1.) Alfred McPhaul, decedent, was a resident at Defendant College Hills Opco, LLC ("College Hills"), a nursing home, when he allegedly sustained, and ultimately died from, a pressure injury. (*Id*. ¶ 2.) Defendant Campbell Street Services, LLC ("Campbell Street"), provides management services for College Hills (collectively "Defendants"). (*Id*. ¶ 20.) On January 15, 2025, the probate court appointed Sammie McPhaul ("Plaintiff") as special administrator of decedent's estate. (Doc. 10-2.) Plaintiff alleges that Defendants were negligent in their care of decedent. This is not the first case filed, however, regarding the alleged negligence in the care of the decedent. The court will proceed by briefly outlining the two cases at issue.

1

A.  *McPhaul* **I (24-1143-JWB)**[1]

On August 16, 2024, Plaintiff filed suit against Defendants.  (Doc. 10 at 6.)  That case, *McPhaul v. College Hills OPCO, LLC*, No. 6:24-cv-01143-JWB (D. Kan.) ("*McPhaul* I"), is currently pending.  The caption identified two plaintiffs: (1) "Sammie McPhaul, as the surviving brother of decedent, Alfred McPhaul," and (2) Sammie McPhaul, "as the soon to be appointed administrator of the Estate of Alfred McPhaul." (*Id*. at 7.)

The complaint in *McPhaul* I stated that "Sammie McPhaul is in the process of becoming the duly appointed administrator of the Estate of Alfred McPhaul." (*Id*.)  The complaint further alleged that "[t]he soon to be established Estate of Alfred McPhaul is/will be a citizen of the State of Kansas." (*Id*.)  Finally, the complaint claimed damages that included Mr. McPhaul's "pain, suffering, and mental anguish, and death." (*Id*. at 8.)  Beyond the complaint, Plaintiffs filed a Disclosure Statement confirming that "[t]he Estate of decedent, Alfred McPhaul" is "a citizen of Kansas." (*Id*.)

On November 25, 2024, Magistrate Judge Severson enterer a scheduling order setting January 20, 2025, as the deadline to amend pleadings.  (*Id*. at 11–12; *see also* Case No. 24-1143, Doc. 24.)  Although Plaintiff filed his complaint on August 16, 2024, stating he was "in the process" of having an administrator appointed, the petition for appointment of a Special Administrator was not filed in probate court until January 13, 2025.  (*See* Doc. 10-1.)  On January 15, 2025, the probate court appointed Sammie McPhaul as special administrator of the Estate. (Doc. 10-2.) The deadline to amend pleadings under the scheduling order expired five days later, on January 20, 2025, without Plaintiff substituting—or seeking leave to do the same—Sammie

---

[1] The court takes judicial notice of *McPhaul* I.  *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (discussing the need for courts to "frequently take judicial notice of prior judicial acts found in records and files when evaluating the merits of a purported claim-preclusion defense.").

McPhaul from his capacity as "soon to be appointed" administrator to his capacity as duly appointed special administrator. (Doc. 18 at 3.)

Approximately five months later, on June 13, 2025, Plaintiff filed expert disclosures which designated ten non-retained expert witnesses to provide opinions on Alfred McPhaul's "conscious pain and suffering." (Doc. 10 at 8–9.)[2] On August 5, 2025, Magistrate Judge Severson found that Plaintiff alleged "both a wrongful death claim and a survival action" with Sammie McPhaul bringing claims in his capacity as "soon to be appointed administrator" of Alfred McPhaul's estate. (Doc. 10 at 8–9; *see also* Case No. 24-1143, Doc. 75.) Magistrate Judge Severson concluded that Sammie McPhaul "is bringing both claims" but expressed uncertainty about whether the survival claim by a "soon to be appointed administrator" was "properly asserted." (Case No. 24-1143, Doc. 75 at 1, n.1.)

On July 18, 2025, Plaintiff filed a motion to consolidate *McPhaul* I and the instant matter. (*See* Case No. 24-1143, Doc. 71.) Magistrate Judge Severson held a status conference and ultimately denied that motion without prejudice, allowing refiling, if applicable, after the instant motion is resolved. (*Id*. at Doc. 95.)

**B. *McPhaul* II (25-2337-JWB)**

On June 22, 2025—184 days after the probate court's appointment order and 153 days after the amendment deadline expired—Plaintiff filed the present case ("*McPhaul* II"). (Doc. 1.) The caption identified the plaintiff as "Sammie Dwayne McPhaul as Special Administrator of the Estate of Alfred Cornelius McPhaul." (*Id*.)

---

[2] Plaintiff's expert witness designation deadline was set for April 14, 2025. (Case No. 24-1143, Doc. 75 at 2.) Defendants objected to the timeliness of the designation and in ruling on the motion, Magistrate Judge Severson found no good cause nor excusable neglect but allowed the out of time designation because "[d]isallowing Plaintiff's expert report would be too harsh of a result." (*Id*. at 12.) However, in that order, Plaintiff's counsel was "warned that future failures to comply with the deadlines set forth in the scheduling order could result in case dispositive sanctions." (*Id*. at 16.) Later, Magistrate Judge Severson subsequently granted, in part, a motion for costs (Case No. 24-1143, Doc. 81) due to "Plaintiff's failure to timely designate an expert" (Case No. 24-1143, Doc. 97).

*McPhaul* II arises out of the same facts as *McPhaul* I: Alfred McPhaul's death on April 21, 2024, allegedly from avoidable pressure injuries developed at the Facility. (*Compare id.* ¶ 1, *with* Case No. 24-1143, Doc. 1 ¶ 2.) The complaint in *McPhaul* II alleges causes of action for "pain and suffering" and "negligence," and Plaintiff acknowledges in his motion to consolidate that the "Second case brought by the Estate of Decedent is a 'survival action.'" (Doc. 10 at 7; *see also* Case No. 24-1143, Doc. 71 at 3.)

*McPhaul* II names the same defendants—College Hills OPCO, LLC and Campbell Street Services, LLC—sued in the same capacities as in *McPhaul* I. (Doc. 10 at 10.) The only distinction between the two cases is the formal title in which Sammie McPhaul appears: as "soon to be appointed administrator" in *McPhaul* I versus as duly appointed "Special Administrator" in *McPhaul* II. (*Id.* at 11.)

The question Defendants ask this court to answer effectively boils down to whether Plaintiff asserted a survival claim in *McPhaul* I. (Doc. 10.) The court has no trouble finding that Plaintiff did assert a survival claim in *McPhaul* I, making the instant action a prime example of attempted improper claim-splitting and rendering the matter ripe for dismissal.

## II.    Standard

Defendants jointly move for dismissal on the basis that Plaintiff failed to state a claim. The court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face and not just conceivable. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 555);

*see also In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). The court construes any reasonable inferences from these facts in favor of the nonmoving party. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).  Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  Moreover, a motion to dismiss is a proper mechanism to address improper claim-splitting:

> It is clear that a motion to dismiss based on improper claim-splitting need not—indeed, often cannot—wait until the first suit reaches final judgment … Thus, in the claim-splitting context, the appropriate inquiry is whether, *assuming that the first suit were already final*, the second suit could be precluded pursuant to claim preclusion.

*Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) (Emphasis in original) (Citations omitted). This test "makes sense, given that the claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation."  *Id.* at 1218-1219.

## III.   Analysis

Defendants jointly argue Plaintiff's complaint in *McPhaul* II should be dismissed as improper claim-splitting.  (*See* Doc. 10 at 6.)  Defendants assert Plaintiff has brought the instant lawsuit to circumvent the court's scheduling order in *McPhaul* I.  (*Id.* at 11.)  In response, Plaintiff argues that is not the case and posits instead that *McPhaul* II raises new facts and claims that are separate and distinct from those in *McPhaul* I.  (*See* Doc. 15.)  The court rejects that argument.

"The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit.  By spreading claims around multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the

efficient and comprehensive disposition of cases.'" *Katz*, 655 F.3d at 1217 (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)). Claim-splitting is a subdiscipline of claim preclusion that does not require a final judgment. *Id.* Instead, the question to answer is "whether the first suit, assuming it were final, would preclude the second suit." *Id.* at 1218. Under Kansas[3] law, there are four elements to claim preclusion: (1) the same claim; (2) the parties are the same or are in privity; (3) the claims were or could have been raised; and (4) a final judgment on the merits. *Cain v. Jacox*, 302 Kan. 431, 434 (2015); *see also Stonehouse Rentals, Inc. v. Doran*, No. 17-CV-4046-JAR-GLR, 2018 WL 324262, at *3 (D. Kan. Jan. 8, 2018). Accordingly, pursuant to *Katz*, the court will assess the first three elements of claim preclusion in assessing Defendants' allegations of improper claim-splitting. 655 F.3d at 1217. To avoid violating the bar on claim-splitting, Plaintiff must "join all claims together that [he] has against" Defendant and "explore all the facts, develop all the theories, and demand all the remedies in the first suit." *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1278–79 (10th Cir. 2006).

Here, Plaintiff argues that the current matter is not an example of improper claim-splitting because the parties and the claims are different. Specifically, Plaintiff argues that because Sammie McPhaul had not been appointed administrator in *McPhaul* I at the time of filing the complaint in that case, and Sammie McPhaul had been appointed administrator at the time of filing *McPhaul* II, they could not be the same parties. (Doc. 15 at 10–13.) As for the claim, Plaintiff argues that because Sammie McPhaul had not been appointed administrator that it was "legally impossible" to pursue a survival action because such actions can only be prosecuted by an administrator. (*Id.* at 8–10.) While Plaintiff is correct that a survival action can only be prosecuted by an administrator

---

[3] In a diversity case, the court applies the State law for claim preclusion in which the federal court sits. *See Hartsel*, 296 F.3d at 986 (noting "the best federal rule for the claim-preclusive effect of a federal diversity judgment is to adopt the law that would be applied by state courts in the State in which the federal diversity court sits.").

under Kansas law,[4] he sorely misunderstands the word "same" as defined in the context of claim-splitting analysis. The court will evaluate the similarity of the parties and the claim, below.

First, the parties in *McPhaul* I and II are the same. It is undisputed that the Defendants are identical.[5] As for the Plaintiffs, to evaluate whether the "[p]arties are the 'same' for res judicata purposes" the court looks to whether "they are in privity with one another." *Cain*, 302 Kan. at 437. "Before privity can be invoked to satisfy the 'same party' element of res judicata, there must be a showing that 'the parties in the two actions are really and substantially in interest the same.'" *Id.* at 437-38 (quoting *Lowell Staats Min. Co., Inc. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989)). Privity may be established by "a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008). Under Kansas law, "[t]here is an identity in the quality of the person when their alignment as adversaries is the same in both suits." *Carter v. City of Emporia*, 815 F.2d 617, 620 (10th Cir. 1987) (applying Kansas law). A non-party is bound by a judgment if he "assume[d] control" over the litigation. *Montana v. United States*, 440 U.S. 147, 154 (1979); *see also Doran*, 2018 WL 324262, at *3.

Plaintiff argues that the parties are not the same because of their different legal roles. (Doc. 15 at 10.) Specifically, Plaintiff posits that in *McPhaul* I, Sammie McPhaul was suing merely in his capacity as an heir at law and in *McPhaul* II, Sammie McPhaul is suing as the decedent's estate administrator. (*Id.*) Defendants respond that the parties are in privity because Sammie McPhaul appears in both cases in capacities that are substantially identical in interest, and Kansas law

---

[4] *See Hoskinson v. High Gear Repair, Inc.*, No. 11-1190-JTM-DJW, 2013 WL 4028804, at *6 (D. Kan. Aug. 7, 2013) ("Kansas law requires that a survival action be maintained by the decedent's personal representative and cannot be prosecuted by a decedent's heirs"); *Hembree v. Tinnin*, 807 F. Supp. 109, 110 (D. Kan. 1992) ("For purposes of a survival action, however, case law has established that the decedent's action survives to the decedent's 'personal representative-not to his heirs.'").
[5] Birchwood Healthcare Partners, LLC and MPAC Healthcare Management, LLC were dismissed without prejudice by Plaintiff. (*See* Doc. 4.)

recognizes privity between an estate administrator and heirs for claim preclusion purposes. (Docs. 10 at 13; 18 at 4-5.) Plaintiff is correct to point out the difference between these capacities,[6] but fails to persuasively address this fatal truth: "[U]nder Kansas law an administrator of an estate is sufficiently in privity with heirs or beneficiaries of an estate to be subject to principles of claim preclusion." *Carter*, 815 F.2d at 620 (citing *Wells v. Ross*, 204 Kan. 676, 680 (1970)); *see also Wright v. Bhd. Bank & Tr. Co.*, 14 Kan. App. 2d 71, 74 (1989) (holding that an heir at law and executor were sufficiently in privity "so as to be subject to the rule against [claim] splitting.").

That is exactly what is happening here. Specifically, Sammie McPhaul aligned as adversary to Defendants in both suits; he assumed control over the litigation in *McPhaul* I by filing as the "soon to be appointed administrator," thereby representing the estate's interests; he designated the estate's citizenship, a jurisdictional requirement only necessary for survival actions;[7] and designated ten non-retained experts to testify on the decedent's conscious pain and suffering—again, damages recoverable only in a survival action. (Doc. 10 at 7-8; Doc. 18 at 1-2.) Accordingly, the court finds privity exists between plaintiffs in *McPhaul* I and II.

Plaintiff insists that it was "legally impossible" for an un-appointed heir to prosecute a survival action in *McPhaul* I, and therefore the estate could not have been a party or in privity until *McPhaul* II was filed. (Doc. 15 at 8–10.) Defendants respond that filing suit before formal appointment is not a legal impossibility; it is a routine capacity defect that is cured by a simple

---

[6] "A survival action may be brought only by the estate administrator pursuant to Kan. Stat. Ann. § 60–1901, and only for the purpose of recovering damages suffered by the decedent prior to death." *Tank v. Chronister*, 160 F.3d 597, 599 (10th Cir. 1998). "In contrast, a wrongful death action may be brought only by the decedent's heirs-at-law pursuant to Kan. Stat. Ann. § 60–1902, and only for their 'exclusive benefit' for damages suffered by them as a result of the wrongful death." *Id*. A wrongful death "action may be brought only by an heir of the decedent 'who has sustained loss by reason of the death.'" *Davidson v. Denning*, 914 P.2d 936, 942 (Kan. 1996) (quoting K.S.A § 60-1902). "The claim for wrongful death is brought neither on behalf or for the benefit of the estate, but only on behalf and for the benefit of the heirs." *Tank*, 160 F.3d at 599.

[7] *See White v. Diversicare of Hutchinson, LLC*, No. 24-2373-KHV-RES, 2024 WL 4637499, at *1 (D. Kan. Aug. 28, 2024) (holding where plaintiff "brought as a survival action pursuant to Kan. Stat. Ann. § 60-1801" they must "allege[] the citizenship of the estate.").

amendment or substitution under Fed. R. Civ. P. 17(a) and 15(c). (Doc. 10 at 11; Doc. 18 at 3–4.) The court agrees with Defendants. Judges in this district have repeatedly allowed exactly that procedure, holding that a "proposed substitution as special administrator of the decedent's estate, would relate back to the filing of the original complaint" when the amendment arises out of the same conduct, transaction, or occurrence. *Hoskinson*, 2013 WL 4028804, at *8. The Tenth Circuit has expressly held that "the main thrust of Rule 17(a) is to allow a correction in parties after the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest." *Esposito v. United States*, 368 F.3d 1271, 1276 (10th Cir. 2004); *see also Est. of Smart v. City of Wichita*, No. 14-2111-EFM, 2018 WL 534335, at *4 (D. Kan. Jan. 24, 2018) (permitting plaintiffs to amend their complaint to "mak[e] clear they are prosecuting [decedent's] survival claims as administrators of the estate" and not in their individual capacities as decedent's heirs). Because an amendment in *McPhaul* I would have substituted the duly appointed Special Administrator and related back to the original filing date, Plaintiff's assertion of "legal impossibility" is without merit and does not defeat privity or justify a second, duplicative lawsuit.[8] Plaintiff's choice to bypass this well-established mechanism and file an entirely new lawsuit constitutes the precise gamesmanship the claim-splitting doctrine is designed to prevent. Such active litigation conduct demonstrates that the estate's interests are thoroughly represented since a survival claim was being pursued long before *McPhaul* II was filed.

Second, the claims in *McPhaul* I and II are the same.[9] To evaluate the same claim inquiry, the Kansas Supreme Court approves of the "transaction approach" employed by the Tenth Circuit.

[8] In two other cases being litigated by Plaintiff's counsel, it appears he is familiar with the procedural step of substitution through amendment. *See Moore v. Golden Oaks Healthcare, Inc.*, Case No. 25-2094-JAR, Doc. 29 (D. Kan. 2025); *Keller v. Diversicare of Council Grove, LLC*, Case No. 23-2556-JWB, Doc. 33 (D. Kan. 2025).
[9] Plaintiff's consolidation motion effectively admits that *McPhaul* I and II are identical in facts and issues. (Doc. 5.) In their motion, Plaintiff describes how both cases involve "virtually identical allegations," "identical factual questions," "identical systemic failures," "identical allegations," and "identical language." (Doc. 5-1.) Plaintiff

*See Rhoten v. Dickson*, 290 Kan. 92, 106, 223 P.3d 786, 797 (2010); *City of Eudora v. Rural Water Dist. No. 4*, 875 F.3d 1030, 1035 (10th Cir. 2017) (stating the court has adopted the transactional approach). "Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 832 (10th Cir. 2005). In Kansas, "the claim or cause of action is defined in terms of the injury for which relief is demanded, that is to say, in terms of the factual circumstances of the controversy rather than the legal theory or remedial statute on which the suit is grounded." *Carter*, 815 F.2d at 620 (citing *Wells*, 204 Kan. at 680). Said another way, "Kansas courts find claims to be identical where plaintiff uses different words to describe a claim, but makes the same argument and relies upon the same operative facts as in his prior case." *See Cosgrove v. Kan. Dep't of Soc. and Rehab. Serv.*, 744 F. Supp. 2d 1178, 1186–87 (D. Kan. 2010).

Here, Plaintiff argues that the claims are different because Kansas law creates two separate causes of action—survival claims (under K.S.A. § 60-1801) and wrongful death claims (under K.S.A. § 60-1902). (Doc. 15 at 2.) Defendants respond that the claims are the same under the transaction approach, as both arise from the same operative facts, that is the decedent's death from alleged pressure injuries. (Docs. 10 at 12-13; 18 at 1-2.) The claims here are identical, as they stem from the same transaction and injury, with *McPhaul* II merely rephrasing the survival claim already pled in *McPhaul* I.

Plaintiff argues that the mere mention of conscious pain and suffering in *McPhaul* I's complaint and the subsequent expert designations did not constitute assertion of a survival claim, and any such references served only a "notice" function for a future case. (Doc. 15 at 3–4.) Defendants counter that requesting damages for the decedent's conscious pain and suffering

---

further insists that both cases "involve common questions of law and fact" and that "these claims complement rather than conflict with each other." (*Id.*)

plainly put Defendants on notice that a survival claim was being asserted. (Docs. 10 at 8; 18 at 2.) Courts in this district routinely hold that "Defendant also had notice that Plaintiff was asserting a survival claim by the substance of the allegations in the original complaint, which requested damages sustained by the decedent for his conscious pain and suffering." *Hoskinson.*, 2013 WL 4028804, at *8. The explicit demand for conscious pain-and-suffering damages in *McPhaul* I (Case No. 24-1143, Doc. 1 ¶ 96), coupled with the designation of ten treating providers to opine on those damages, provided Defendants unmistakable notice that the survival claim was being prosecuted in the first action.

Third, Plaintiff's remaining arguments are wholly unpersuasive. Plaintiff argues that the five-month gap between appointment and filing *McPhaul* II reflects probate realities, not manipulation, and the five-day window before the amendment deadline outlined in the scheduling order made amendment impossible. (Doc. 15 at 4-5.) As a practical matter, the substitution that Plaintiff needed to effectuate was far from complicated and the court is comfortable stating that five-days was plenty of time to effectuate such a change—or at the very least seek an extension of time to do so. Neither was done by Plaintiff in *McPhaul* I. As such, district courts may dismiss duplicative suits filed to evade procedural rules, and here Plaintiff's delay and failure to amend post-appointment, while filing an identical second suit, wastes resources and undermines judicial efficiency. *See Katz*, 655 F.3d at 1217.

Lastly, it appears to this court that Plaintiff's counsel is attempting to circumvent the procedural rules that require timely amendments and prohibit duplicative litigation. "[A] district court may apply the rule against claim-splitting when a party files two identical—or nearly identical—complaints to get around a procedural rule. *Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016) (citing *Hartsel Springs*, 296 F.3d at 990 (recognizing general rule that "plaintiff

may 'not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed'" (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977)))). Here, Plaintiff admits that filing *McPhaul* II was necessary "given the expired amendment deadline." (Doc. 15 at 5.) Such a statement effectively admits improper circumvention, as Plaintiff had the opportunity to amend timely or seek leave post-deadline but instead filed a duplicative suit.

In summary, by filing *McPhaul* II, Plaintiff has merely attempted to take "two bites at the apple." *See Kenmen Engineering v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002). The court will not allow it.

## IV.    Show Cause

Plaintiff's response (Doc. 15) to the underlying motion was riddled with inaccurate quotes and case citations.[10] Defendants note that Plaintiff's counsel has used artificial intelligence (AI) in drafting in other jurisdictions, possibly leading to hallucinations such as fabricated quotations. (Doc. 18 at 1, n.1.) While the court does not base its ruling on this, nor can it confirm whether AI was used, the court is troubled by the many inaccurate quotations. *See Strong v. United States*, No. 24-1537, 2025 WL 3171636, at *9 (Fed. Cl. Nov. 13, 2025) ("Fake quotations and case citations do not help the court evaluate a party's claims").

---

[10] Plaintiff quotes *Cory v. Troth*, 170 Kan. 50 (1950) as saying "must be maintained by the personal representative of the decedent and cannot be prosecuted by a decedent's heirs," but this quote is found nowhere in the opinion. (Doc. 15 at 2, 6.) Plaintiff quotes *Mason v. Gerin Corp.*, 231 Kan. 718 (1982) as saying that a statute "authorized [plaintiff] to bring an action in her capacity as decedent's administratrix to recover for that damage." (Doc. 15 at 8.) But it does not appear in the opinion. Plaintiffs quote *Fanning v. Sitton Motor Lines*, 695 F. Supp.2d 1156 (D. Kan. 2010) as stating that "the victim had 'exhibited some cognitive awareness' between the time of trauma and death," but that quote does not appear in the opinion. (Doc. 15 at 9.) Also, in *Cochrane v. Schneider Nat'l*, F. Supp. 613 (D. Kan. 1997), the quote "even the movement of the toes or legs of the decedent" does not exist. (Doc. 15 at 9.) Plaintiff cites *Lemmons v. Board of County Comm'rs*, 2001 WL 1717856, at *3 (D. Kan. Aug. 8, 2001), quoting that "The goal of relation-back principles is to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense," but, once again, that quotation does not appear. (Doc. 15 at 14.) Finally, Plaintiffs cite *Pape v. Kansas Power & Light Co.*, but the citation ("231 Kan. 595") is not correct. (Doc. 15 at 9.) The court did not conduct an exhaustive review of Plaintiff's entire brief but was satisfied that Plaintiff's counsel had not properly checked the citations prior to filing.

Accordingly, Jonathan Steele, Plaintiff's counsel, is ORDERED to file a written response by January 20, 2026, explaining the false case citation and quotations included in his motion and showing cause as to why he should not be sanctioned pursuant to Rule 11(c). Mr. Steele must also serve a copy of this order on his client and file a proof of service by January 20, 2026.

## V.    Conclusion

THEREFORE, Defendants' motion to dismiss (Doc. 10) is GRANTED.

IT IS SO ORDERED.  Dated this 6th day of January, 2026.

_s/ John W. Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE