IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SAMMIE DWAYNE MCPHAUL, as
Special Administrator of the ESTATE
OF ALFRED CORNELIUS MCPHAUL

        Plaintiff,

v.                                     Case No. 25-2337-JWB


COLLEGE HILLS OPCO, LLC, *et al.*,

        Defendants.


**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). (Doc. 23.) Defendants did not respond and the time for doing so has now passed. For the reasons stated herein, the motion is DENIED.

**I.     Facts and Procedural History**

This matter arises out of the death of Alfred McPhaul, who was a resident at College Hills Opco, LLC, a nursing home with management services provided by Campbell Street Services, LLC (collectively, "Defendants"). (Doc. 1 ¶¶ 2, 20.) Sammie McPhaul, brother and special administrator of the estate of Alfred McPhaul ("Plaintiff"), alleges that Defendants were negligent in their care of Alfred McPhaul which ultimately caused him to sustain, and die from, a pressure injury. (*Id.* ¶ 2.) The present dispute, however, concerns not the merits of those allegations, but rather Plaintiff's decision to pursue them across two separate federal lawsuits. Accordingly, the court will start by briefly outlining the two cases at issue.

1

**A.** *McPhaul I* **(24-1143-JWB)[1]**

On August 16, 2024, Plaintiff filed suit against Defendants in this district. *See McPhaul v. College Hills OPCO, LLC*, No. 6:24-cv-01143-JWB (D. Kan.) ("*McPhaul I*"). The case caption identified two plaintiffs: Sammie McPhaul in his capacity as decedent's surviving brother, and Sammie McPhaul as the "soon to be appointed administrator of the Estate of Alfred McPhaul." (*McPhaul I*, Doc. 1 at 1.) The complaint stated that Plaintiff was "in the process of becoming" the duly appointed administrator and designated the estate's citizenship as Kansas—a jurisdictional allegation necessary only for a survival action. (*McPhaul I*, Doc. 1 at 2.)[2] The complaint also brought a claim for wrongful death. (*McPhaul I*, Doc. 1 at 8.)

Despite filing suit in August 2024 with the stated intention of obtaining an administrator appointment, Plaintiff did not petition the probate court for appointment until January 13, 2025, nearly five months later. (Doc. 10-1.) On January 15, 2025, the probate court appointed Sammie McPhaul as special administrator of the estate of Alfred McPhaul. (Doc. 10-2.) By that time, a scheduling order had already been entered setting January 20, 2025, as the deadline to amend the complaint. (*McPhaul I*, Doc. 24.) But after formalizing the appointment, Plaintiff took no action to formally amend his capacity from "soon to be appointed administrator" to duly appointed special administrator before the amendment deadline passed, and he did not seek an extension of time to do the same. This oversight is particularly problematic because, under Kansas law, "there

---

[1] The court takes judicial notice of *McPhaul I*. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (discussing the need for courts to "frequently take judicial notice of prior judicial acts found in records and files when evaluating the merits of a purported claim-preclusion defense."). For sake of clarity, all citations to *McPhaul I* will begin with "*McPhaul I*" and be followed by the docket entry and page number from that case, for example: (*McPhaul I*, Doc. 1 at 1.). Whereas citations to the instant case will merely cite to the relevant docket entry and page number, for example: (Doc. 1 at 1.). Additionally, just prior to this order being entered, the parties stipulated to dismissal without prejudice in *McPhaul I*, subject to certain conditions contained in the stipulation. (*McPhaul I*, Doc. 119.)

[2] *See White v. Diversicare of Hutchinson, LLC*, No. 24-2373-KHV-RES, 2024 WL 4637499, at *1 (D. Kan. Aug. 28, 2024) (holding where plaintiff "brought as a survival action pursuant to Kan. Stat. Ann. § 60-1801" they must "allege[] the citizenship of the estate.").

is no dispute that a survival action must be brought by the administrator of the estate, *not* by an heir at law." *Groenhagen v. Heetco, Inc.*, 74 P.3d 1020 (Kan. Ct. App. 2003) (emphasis in original); *see also Hoskinson v. High Gear Repair, Inc.*, 2013 WL 4028804, at *6 (D. Kan. Aug. 7, 2013) ("Kansas law requires that a survival action be maintained by the decedent's personal representative and cannot be prosecuted by a decedent's heirs")

Nearly six months later, in June 2025, Plaintiff filed expert disclosures[3] in *McPhaul I* designating ten non-retained expert witnesses to provide opinions on Alfred McPhaul's conscious pain and suffering—damages recoverable only through a survival action.[4]  (*McPhaul I*, Doc. 61.) As a result, on August 5, 2025, Magistrate Judge Severson found that Plaintiff had alleged both a wrongful death claim and a survival action.  (*McPhaul I*, Doc. 75 at 2.)  Plaintiff never sought amendment or an extension thereof.

### B.  *McPhaul II* (25-2337-JWB)

On June 22, 2025—184 days after the probate court's appointment order and 153 days after the amendment deadline had expired in *McPhaul I*—Plaintiff filed the present action ("McPhaul II").  (Doc. 1.)  The complaint named Sammie McPhaul as Special Administrator of the Estate of Alfred McPhaul and alleged causes of action for pain and suffering and negligence arising from the same operative facts underlying *McPhaul I*—that is, Alfred McPhaul's death on April 21, 2024, from alleged pressure injuries sustained at the facility.  (*Id.* ¶ 1.)  The same two Defendants were named in the same capacities.  (*Id.* at 3–4.)  The only distinction between the two cases is the formal title in which Sammie McPhaul appears as "soon to be appointed administrator" in

---

[3] Missing court ordered deadlines has become a trend with Plaintiff's counsel.  Plaintiff's expert witness designation deadline was set for April 14, 2025.  (*McPhaul I*, Doc. 75 at 2.)  Defendants objected to the timeliness of the designation and in ruling on the motion, Magistrate Judge Severson found no good cause nor excusable neglect but allowed the out of time designation because "[d]isallowing Plaintiff's expert report would be too harsh of a result." (*McPhaul I*, Doc. 75 at 12.)

[4] *Hoskinson.*, 2013 WL 4028804, at *8 ("Plaintiff was asserting a survival claim [because he] requested damages sustained by the decedent for his conscious pain and suffering.").

3

*McPhaul I* versus as duly appointed "Special Administrator" in *McPhaul II*. (*Compare id*. at 1 *with McPhaul I*, Doc. 1 at 1.)

On September 23, 2025, Defendants filed a joint motion to dismiss McPhaul II for improper claim-splitting. (Doc. 10.) Notably, Plaintiff, in his response, admitted that filing *McPhaul II* was necessary "given the expired amendment deadline and the Court's expressed uncertainty about the 'properly asserted' nature of survival claims in [*McPhaul I*]." (Doc. 15 at 5.) When ripe, the court took up Defendants' motion to dismiss. (Doc. 19.)

### C. The Court's Dismissal of *McPhaul II* (Doc. 19)

The court granted Defendants' motion to dismiss *McPhaul II* as an improper attempt at claim-splitting. Applying the three-part analysis set forth in *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011), the court evaluated whether *McPhaul I*, if final, would preclude[5] *McPhaul II*. *Id*. at 1218. It held that it would and therefore dismissed *McPhaul II*.

On the question of parties, the court found that Sammie McPhaul appears in both cases in capacities that are substantially identical in interest. (Doc. 19 at 7–8.) Under Kansas law, an administrator of an estate is sufficiently in privity with an heir or beneficiary to be subject to claim preclusion. *Carter v. City of Emporia*, 815 F.2d 617, 620 (10th Cir. 1987). Plaintiff's argument that it was "legally impossible" to pursue a survival claim was unpersuasive because capacity defect of that kind are routinely cured through amendment and substitution under Federal Rules of Civil Procedure. Notably, this court pointed out previous examples of when Plaintiff's counsel did that very thing. (Doc. 19 at 9, n.8.)

---

[5] Under Kansas law, there are four elements to claim preclusion: (1) the same claim; (2) the parties are the same or are in privity; (3) the claims were or could have been raised; and (4) a final judgment on the merits. *Cain v. Jacox*, 302 Kan. 431, 434 (2015). Pursuant to *Katz*, the court will assess the first three elements of claim preclusion in assessing Defendants' allegations of improper claim-splitting. 655 F.3d at 1217. Ultimately, the question to answer is "whether the first suit, assuming it were final, would preclude the second suit." *Id*. at 1218. If answering affirmatively, the second suit must be dismissed as improper claim splitting.

On the question of claims, the court applied the transactional approach endorsed by both the Tenth Circuit and the Kansas Supreme Court. *See Rhoten v. Dickson*, 290 Kan. 92, 106, 223 P.3d 786, 797 (2010); *City of Eudora v. Rural Water Dist. No. 4*, 875 F.3d 1030, 1035 (10th Cir. 2017). Both cases arise from the identical transaction—Alfred McPhaul's death from pressure injuries at Defendants' facility—and *McPhaul II* does nothing more than replead the survival claim that was asserted in *McPhaul I*. (Docs. 19 at 9–10.) Further, the explicit demand for conscious pain-and-suffering damages in *McPhaul I*, coupled with the designation of ten treating providers to opine on those damages, provided Defendants' unmistakable notice that the survival claim was being prosecuted in the first action. (*McPhaul I*, Docs. 1, 61.)

Finally, the court found that Plaintiff's own admission effectively conceded the improper purpose of the second filing. (Doc. 15 at 5.) Plaintiff had ample opportunity to amend timely, seek leave to amend post-deadline, or otherwise correct the capacity issue through established procedural mechanisms. Having bypassed those mechanisms entirely and instead filed a duplicative lawsuit, Plaintiff engaged in precisely the gamesmanship the claim-splitting doctrine is designed to prevent. *McPhaul II* was accordingly dismissed. The instant motion followed, arguing that the court committed manifest error. (Doc. 23.)

## II.     Standard

Plaintiff moves to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). (Doc. 23.) Rule 59(e) permits a party to request reconsideration of a final judgment. "Grounds which justify alteration or amendment under Rule 59(e) include: (1) an intervening change in controlling law; (2) new evidence that was previously unavailable; or (3) a need to correct clear error or prevent manifest injustice." *Lenexa 95 Partners, LLC v. Kin, Inc.*, 2023 WL

171925, at *1 (D. Kan.) (citation omitted), *appeal dismissed*, 2023 WL 5608807 (10th Cir. Apr. 27, 2023).  Plaintiff moves for reconsideration under the third prong.  (Doc. 23 at 1.)

Rule 59(e) motions "allows a party to reargue previously articulated positions to correct clear legal error." *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1005 (10th Cir. 2017).  But after entry of judgment the public "gains a strong interest in protecting the finality of judgments." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019).  Moreover, Rule 59(e) motions are "not appropriate [vehicles] to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Rezac Livestock Comm. Co., Inc. v. Pinnacle Bank*, 2019 WL 2613179, *9 (D. Kan. June 26, 2019) (quotation omitted).  In other words, Rule 59(e) motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of the judgment." *Nelson*, 921 F.3d at 929 (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).  Finally, a district court has discretion when deciding a motion to reconsider.  *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

## III.    Analysis

Plaintiff moves to alter or amend the judgment on the grounds that the court committed manifest errors of law.  (Doc. 23 at 2.)  Plaintiff raises multiple arguments in support.  The court will address each in turn; ultimately holding that none of them persuasively identify a manifest error of law.  Accordingly, the motion is denied.

Plaintiff first seems to contend that the court dismissed *McPhaul II* because Plaintiff's counsel missed the deadline to amend the complaint in *McPhaul I* and that this somehow violates the *Erie* Doctrine and its progeny.  (Doc. 23 at 2–4.)  This argument represents a sore misunderstanding of the court's basis for dismissal and does not identify a manifest error of law.

The court did not dismiss *McPhaul II*—or as Plaintiff frames it "extinguish plaintiff's substantive right to file a [survival] claim"—because of a missed amendment deadline. (*Id*. at 3.) Rather, the court found that the survival claim had already been asserted in *McPhaul I*. (Doc. 19 at 12.) Specifically, the survival claim was asserted through the complaint's demand for damages for Alfred McPhaul's "pain, suffering, and mental anguish, and death," through the estate's citizenship designation, and through the designation of ten non-retained expert witnesses to testify on conscious pain and suffering. (*Id*. at 7–11.) *McPhaul II* was not dismissed because of the scheduling order. This court merely pointed out its perception that Plaintiff's counsel was attempting to circumvent procedural rules. Rather, *McPhaul II* was dismissed because the same claim had been pending in *McPhaul I* and Plaintiff attempted to split it across two federal lawsuits, something he may not do. *See Katz v. Gerardi*, 655 F.3d 1212, 1217–18 (10th Cir. 2011) (explaining the claim-splitting doctrine).

With respect to Plaintiff's argued application of *Erie* and *Guaranty Trust* to this matter, they are inapposite. Those cases stand for the proposition that a federal court sitting in diversity must apply state substantive law, not federal law, to questions that would determine the outcome of the litigation. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945). The claim-splitting doctrine utilized by the court to dismiss *McPhaul II* does not apply federal law in place of state law; it applies state-law claim preclusion principles—which Kansas law recognizes—to prevent duplicative litigation. *See Cain v. Jacox*, 302 Kan. 431, 434 (2015).

Plaintiff also argues that he should have been allowed to file *McPhaul II* because the statute of limitations for his survival claim had not yet run. (Doc. 19 at 3.) This argument lacks merit. If filing a timely second lawsuit were sufficient to override the claim-splitting doctrine whenever the

7

statute of limitations had not yet expired, then claim-splitting could never be enforced against a plaintiff who brought a duplicative suit within the limitations period. That cannot be the law. The Tenth Circuit has made clear that the claim-splitting rule "does not require a final judgment in the first case" and just because the statute of limitations had not yet run does not authorize Plaintiff to violate the claim-splitting doctrine. *Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016). Finally, Plaintiff's *Erie* argument is a repackaging of arguments already raised and rejected, and Rule 59(e) does not permit re-litigation of previously addressed issues that could have been raised. *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019).

Next, Plaintiff argues that the court committed manifest error because consolidation of the two cases is the preferred remedy under "controlling precedent." (Doc. 23 at 4–6.) The precedent cited by Plaintiff all existed prior to judgment. Thus, these arguments were available to Plaintiff and were not raised and can be denied on that basis alone. But the court will briefly address them.

Plaintiff points to *N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 2009 WL 3739735 (D. Kan. Nov. 6, 2009) as supporting consolidation in the instant matter. (Doc. 23 at 4.) It does not. In that case, the Plaintiff alleged "claims beyond those alleged in" in the first action. *N. Nat. Gas Co.*, 2009 WL 3739735 at *12. Further, as Plaintiff points out, *Northern Natural Gas* identified dismissal as appropriate "to protect a party from multiple harassment and expense over the same claim." *Id.* at *13. This case fits squarely within that scenario.

Plaintiff's reliance on *McCoy v. Whirlpool Corp.*, 2003 WL 124531 (D. Kan. Jan. 12, 2003) is similarly unavailing. In *McCoy*, there was no suggestion that the plaintiff attempted to bypass available remedies in order to file duplicate suits. Here, by contrast, Plaintiff's own response brief admitted that *McPhaul II* was filed because of "the expired amendment deadline." (Doc. 15 at 5.) That admission reflects a deliberate choice to circumvent the scheduling order in *McPhaul I* rather

than seek relief within that case.  In sum, the court did not overlook consolidation as a remedy; it concluded that dismissal was the appropriate exercise of its discretion given the circumstances. Rule 59(e) does not permit Plaintiff to relitigate the court's discretionary remedial choice.  *Nelson*, 921 F.3d at 929.

Next, Plaintiff contends that this court misapplied *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982 (10th Cir. 2002).  (Doc. 23 at 8–9.)  Plaintiff misreads *Hartsel Springs*, and the argument does not establish manifest error.

*Hartsel Springs* is distinguishable on a fundamental ground that Plaintiff glosses over. There, the district court initially dismissed the second action based on the prohibition against claim-splitting.  *Hartsel Springs*, 296 F.3d at 989.  The Tenth Circuit reversed because, among other reasons, the second suit was brought against an entity that was different from, and not in privity with, an entity in the first action, and whose claims had never been asserted in the first suit. *Id.* at 988–90.  Here, in contrast, the Defendants are identical in both actions and Sammie McPhaul is in privity with himself as "the surviving brother of [decedent]" in *McPhaul I* and as special administrator of decedent's estate in the instant case.  *See Carter v. City of Emporia*, 815 F.2d 617, 620 (10th Cir. 1987) ("[U]nder Kansas law an administrator of an estate is sufficiently in privity with heirs or beneficiaries of an estate to be subject to principles of claim preclusion.").  Plaintiff's argument to the contrary does not demonstrate a manifest error.

But Plaintiff does not relent.  He goes on to argue that the court's privity finding "must be functional, not categorical."  (Doc. 23 at 9.)  Specifically, Plaintiff argues, the "functional question is whether the heir in *McPhaul I* could have adequately represented the estate's interests in prosecuting a survival claim."  (*Id.*)  He goes on to say, "the answer is no" because "[a] survival

action may be brought only by the estate administrator." (*Id*.)  There can be no doubt Plaintiff's counsel is well aware of the importance of amending complaints when legal status changes.

In any event, as previously explained, the court did not invoke a categorical rule of privity between heirs and administrators.  Rather, it conducted the functional analysis Plaintiff seeks.  The court examined the actual conduct of the litigation: Sammie McPhaul filed suit in *McPhaul I* as the "soon to be appointed administrator," designated the estate's Kansas citizenship, and designated ten expert witnesses to opine on the decedent's conscious pain and suffering—damages recoverable only through a survival action.  (Doc. 19 at 7–8.)  These are not categorical markers of legal status; they are functional indicators that Sammie McPhaul was actively representing the estate's interests in *McPhaul I* long before formal appointment was obtained.

Oddly, Plaintiff argues that dismissal of *McPhaul II* permanently forfeits the estate's ability to recover punitive damages, which are unavailable in a wrongful death action under Kansas law. (Doc. 23 at 10–11.)  This argument holds no relevance.  The court did not hold that punitive damages are unavailable; it held that *McPhaul II* is an improper attempt to split a claim that was, at the time, before the court in *McPhaul I*.  The remedy for any concerns about how the survival claim and any recoverable damages are postured in *McPhaul I* lies in that case.  Plaintiff's failure to pursue those remedies cannot be converted, by the device of this motion, into a basis for granting Rule 59(e) relief.

Finally, Plaintiff's argument that *Taylor v. Norfolk Southern Railway Co.*, 86 F. Supp. 3d 448 (M.D.N.C. 2015), requires consolidation in the instant matter is equally unpersuasive. Plaintiff argues that by dismissing *McPhaul II*, the survival claim "will be forever barred."  (Doc. 23 at 11.)  Again, this argument is of no relevance based on the question presently before the court. Here, following entry of the original order that is the subject of this Rule 59 motion, and after this

10

decision was drafted and undergoing review, the parties filed a stipulation of dismissal without prejudice in *McPhaul I*. Consequently, the survival claim may be refiled, subject to the stipulation of dismissal and applicable law, in *McPhaul* I, which is where it should have been filed in the first instance. (*McPhaul I*, Doc. 119.) If anything, *Taylor's* central lesson is that litigants facing capacity issues in pending cases should act promptly and within established procedural mechanisms to correct them. *Taylor*, 86 F. Supp. 3d at 463. The plaintiff in *Taylor* lost his claims because he failed to act in time within his pending case. *Id*. In contrast here, Plaintiff has lost this case because he had a nearly identical case—with identical claims—that was pending when the underlying decision in this case was rendered. Accordingly, Plaintiff's invocation of *Taylor* as a basis for Rule 59(e) relief accordingly fails.

As aptly said by the Supreme Court and especially relevant here, "[t]he predicament in which [Plaintiff] finds himself is of his own making." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401–02 (1981). And this court will not quickly upset well established precedent to provide Plaintiff relief. In conclusion, Plaintiff fails to raise any basis under Rule 59 that would support relief from the judgment entered in this case and his motion is therefore denied.

## IV.    Conclusion

THEREFORE, Plaintiffs' motion to alter or amend the judgment (Doc. 23) is DENIED.

IT IS SO ORDERED. Dated this 24th day of April, 2026.

 s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE